IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHEILA MARGARET MCGEE<br><br>**Plaintiff**<br><br>v.<br><br>**KINGDOM OF SAUDI ARABIA, et al.**<br><br>**Defendants** | Civil Action No.: 1:19-cv-01734-ABJ |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR TRANSFER**

**INTRODUCTION**

Defendants' motion to dismiss or transfer fails because: (1) it ignores the fact that a foreign state and its embassy are both treated identically under the Foreign Sovereign Immunities Act (FSIA), (2) it ignores a federal statute specifying this Court as a venue for cases against these foreign sovereign defendants, (3) it misleadingly characterizes the Eastern District of Virginia as a more convenient court when in fact this Court is physically closer to the parties and nearly all fact witnesses, and (4) it contorts legal principles to suggest that there is something inappropriate about taking a nonsuit in a state court action against defendants' driver and then filing against the sovereign defendants (as employer) in this Court. Defendants' motion has no merit and should be denied in full.

This FSIA case arises from the negligent operation of a large SUV owned by the Saudi government and driven by an employee of the Saudi government, who worked at the Saudi Embassy in Washington, D.C. On October 24, 2016, defendants' driver, while operating the truck in the scope of his employment, ran a red light and struck Sheila McGee as she was

jogging in a crosswalk favored by a "walk signal." She suffered multiple fractured bones in her head and face and suffered a significant traumatic brain injury with loss of brain tissue visible on brain imaging. She remains with very significant, ongoing cognitive and emotional adverse effects of the brain injury, which curtail her activities, cause her to struggle at work, and diminish nearly all aspects of her daily life.

Rather than defend on the substance, defendants filed a pre-answer motion raising various arguments. Defendants' scattershot motion to dismiss or transfer fails on the law and the facts. The motion suffers from three major flaws.

***First,*** the motion misstates the legal status of the Embassy of Saudi Arabia. Under clear federal law, embassies are considered part of the sovereign nation which they represent. In the last 20 years, there have been at least five opinions from this Court stating that foreign embassies are treated as part of the "foreign state" they represent. *See infra* at 6-7. Ignoring this settled law, and citing no law to the contrary, defendants' motion erroneously presupposes that the Embassy of Saudi Arabia and the Kingdom of Saudi Arabia are two legally distinct entities and therefore should be treated differently for the purposes of (i) employment status of defendants' negligent driver and (2) venue. Settled law is to the contrary and requires rejection of defendants' motion for summary judgment. Simply put, defendants' concession that their driver was employed by the Saudi Embassy means that he is an employee of a foreign government, which can be held liable in tort under the FSIA for his actions in the scope of that employment. This legal error also infects defendants' arguments based on venue, as again settled law in this jurisdiction treats embassies as foreign states for all purposes under the FSIA.

***Second***, defendants also err factually and legally when they argue Eastern District of Virginia is a more convenient and suitable forum than this Court. In fact, this Court is closer

physically to the parties and most fact witnesses, and is closer to the scene of the collision. This Court has unparalleled experience with claims against foreign sovereigns, which by definition do not require jury time. As noted, this Court also has an express statutory directive to hear such cases.

***Third***, defendants make erroneous and illogical legal arguments when they attempt to apply the doctrine of election of remedies to the current case. The doctrine of election of remedies provides no basis to dismiss or transfer this action. That doctrine deals with the requirement that – in certain cases – plaintiffs must elect to pursue a tort or contractual remedy, or must select between wrongful death and survival act claims. It has nothing to do with plaintiff's decision to take a nonsuit against defendants' driver in a Virginia state court or the decision to refile that claim as a protective action. As explained in detail below, no issue of election of remedies is raised by these procedural facts. Rather, plaintiff's filing in Virginia and then in this Court was done in order to ensure that she would have access to a full remedy for the enormous harms and losses caused by defendants' negligence. Namely, a terrible brain injury that has irreparably harmed nearly all aspects of her life. No case arising out of the incident has gone to judgment and therefore none can have any preclusive effects.

Defendants' *non sequitur* and unsupported arguments have no merit and their motion should be denied.

## FACTUAL BACKGROUND AND CORRECTION OF DEFENDANTS' FACTUAL MISSTATEMENTS

This case arises out of a preventable intersection collision on October 24, 2016 between a large SUV driven by defendants' employee in the scope of his employment and pedestrian Sheila McGee. According to the police report and the statements of eyewitnesses, the collision occurred in Arlington, just over the D.C.-Virginia line, when defendants' SUV ran a red light

into a crosswalk and hit Ms. McGee.  Ms. McGee was thrown in the air by the impact and violently struck her head.  *See* Exhibit 1 (statement of Molly Hammond indicating that SUV went through red light and struck a female runner in the crosswalk); Exhibit 2 (statement of Veronica Gekhman stating that SUV went through red light and hit a woman in the crosswalk, causing her to fly through the air); Exhibit 3 (statement of Richard Smith that impact occurred when "jogger jogged across crosswalk and vehicle in lane to my right ran through light and jogger straight on at pretty high rate of speed"); Exhibit 4 (police report stating that defendants' driver "disregarded traffic signal" and that Ms. McGee was "crossing at intersection with signal.").  Defendants' driver pleaded guilty to failing to pay full time and attention. *See* Exhibit 5 (website printout of defendants' driver's guilty plea).

Despite this overwhelming evidence that defendants' driver was solely at fault, defendants misstate the facts of the collision and claim in the first paragraph of their memorandum that the collision occurred when "plaintiff ran into the driver's side bumper of defendants' SUV."  Defendants' casual misrepresentations of the evidence illustrate their low regard for factual accuracy.

Defendants also misstate the facts on the relative convenience of litigating in this judicial district versus the Eastern District of Virginia.  This Court is equally, if not more, convenient for the parties, the first responders, many of plaintiff's medical providers who would be witnesses, and several eyewitnesses to the collision.  Indeed, undersigned counsel calculated the shortest distances between multiple witnesses and the two courthouses (EDVA vs. DDC) using "Google Maps."  This analysis showed that this Court is closer to the scene, the parties, and the great majority of potential witnesses in this case:

- The scene of the collision is 5.0 miles from this Court, but 6.9 miles from EDVA.

- Defendants are only 2.4 miles from this Court, but 8.9 miles from EDVA.

- Plaintiff lives 5.1 miles from this Court and 5.6 miles from EDVA.

- The first responders are significantly closer to this Court than they are to EDVA - the Arlington Police Department headquarters is 3.8 miles closer to this Court and the responding Arlington Fire Department units were 4.1 miles closer to this Court than they are to EDVA.

- This Court is closer to nearly all medical witnesses who have tended to Ms. McGee's significant brain injuries.

- This Court is closer than EDVA to three of the six fact witnesses identified in the police report.

The identities, addresses and comparative distances for these parties and fact witnesses are set forth in Exhibit 6. There is no basis for defendants' argument that the Eastern District of Virginia is a more convenient forum.

    Defendants' statements about plaintiff's reasons for initially filing suit in the Circuit Court of Arlington County, and then taking a nonsuit to file in this Court, also misrepresent the facts. Plaintiff initially filed against defendants' driver individually. However, plaintiff learned in the course of discovery that (1) defendants' driver was acting within the scope of his employment with the Saudi government at the time he hit plaintiff and (2) defendants' driver only had limited insurance coverage. This coverage is inadequate to make the plaintiff whole for the significant and ongoing harms caused by the brain bleed, fractured skull, and other sequelae from the traumatic brain injury inflicted on plaintiff by defendants' negligence. As such, she

took a nonsuit in the Virginia action and explored other options for seeking redress.[1]  Because defendants' driver was acting within the scope of employment with the sovereign defendants, there is no immunity, this Court has jurisdiction, and this Court is the most appropriate forum for this timely-filed action.

## ARGUMENT

1. **The Kingdom Of Saudi Arabia Is Not Entitled To Dismissal Because The Negligent Driver Was Employed By The Kingdom And Was Acting Within The Scope Of That Employment When He Negligently Ran His SUV Into Plaintiff Sheila McGee.**

Defendants make the unsupported (and insupportable) argument that their negligent driver was employed by the Embassy of Saudi Arabia, but not by the Kingdom of Saudi Arabia. As demonstrated below, this argument is a *non sequitur*, because the Kingdom of Saudi Arabia and its embassy do not have a separate legal existence.

It is settled law in this circuit and elsewhere that an embassy of a foreign government is treated for all purposes under the Foreign Sovereign Immunities Act as part of the foreign state it represents.  This Court and others have so ruled in various contexts:

- *Jouanny v. Embassy of France in the United States*, 220 F. Supp. 3d 34, 38-39 (D.D.C. 2016).  This Court explained in the context of service of process that an embassy is treated legally as part of the "foreign state or its political subdivision" and not as a separate entity, "agency or instrumentality:"

    > Service upon a "foreign state or its political subdivision, agency, or instrumentality must be ... [accomplished] in accordance with 28 U.S.C. § 1608." The requirements for service under Section 1608 depend on the

---

[1] A nonsuit is a procedural rule in Virginia that allows a plaintiff to voluntarily dismiss a claim without prejudice and then refile within six months. Virginia Code § 8.01-380.  Plaintiff promptly filed this action in this Court after her nonsuit.  However, because defendants exercised their right to insist on time-consuming service through diplomatic means, the time period for refiling the nonsuited case in Virginia approached expiration and plaintiff refiled against defendants' driver.  That protective action has not been served.   As such, there is no significant threat of vexatious litigation, or litigation in two different forums.  Plaintiff intends to proceed in this forum only and, when the case is ripe for settlement discussions, intends to resolve all claims arising out the October 24, 2016 collision together.  There is no significant risk of duplicative litigation.

type of foreign entity being served. ***A "foreign state or [its] political subdivision" must be served according to the steps laid out in Section 1608(a), and "an agency or instrumentality of a foreign state" must be served according to the requirements under Section 1608(b).***

A foreign entity is considered a "foreign state" for purposes of the FSIA if it is an "integral part of a foreign state's political structure." Applying that test, courts in this District consistently have held that embassies, such as Defendant, are considered "foreign states" for purposes of the FSIA. ***Thus, Defendant [Embassy] in this case qualifies as a foreign state under the FSIA, and this court may exercise jurisdiction over it only if Plaintiff served process in accordance with Section 1608(a).*** (emphasis added) (citations omitted)

- *Howe v. Embassy of Italy,* 68 F. Supp. 3d 26, 32-33 (D.D.C. 2014) (finding that "Embassy of Italy in Washington, D.C., is an 'integral part of a foreign state's political structure,' making it a 'foreign state' for the purposes of the FSIA.").
- *USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namibia*, 681 F.3d 103, 107 (2d Cir. 2012) ("A foreign state's permanent mission to the United Nations is indisputably the 'embodiment' of that state.").
- *Int'l Road Fed. v. Embassy of the Democratic Republic of The Congo,* 131 F. Supp. 2d 248, 250 (D.D.C.2001) ("Defendant [embassy] is a foreign state" for purpose proof needed before court may issue a default judgment).
- *Ellenbogen v. The Can. Embassy,* No. 05–01553, 2005 WL 3211428, *2 (D.D.C. 2005) ("[I]t is well-settled that an embassy is a 'foreign state' ... not an 'agency or instrumentality' thereof").
- *Underwood v. United Republic of Tanzania,* 1995 WL 46383, *2 (D.D.C. Jan. 27, 1995) ("[W]e conclude that as a matter of law an embassy of a sovereign nation is a foreign state which must be served pursuant to § 1608(a)").
- *Gray v. Permanent Mission of the People's Republic of the Congo*, 443 F. Supp. 816, 820 (S.D.N.Y. 1978) (table decision), aff'd, 580 F.2d 1044 (2d Cir. 1978) ("there can be no doubt that the Congo Mission is a foreign state within the meaning of the [the FSIA]").

The Federal Judicial Center has also stated in clear terms that an embassy is considered a "foreign state". In its 2013 publication, "The Foreign Sovereign Immunities Act: A Guide for Judges," at pages 27-30, the FJC distinguishes between "Foreign States, Components and Political Subdivisions" and "Agencies and Instrumentalities," and specifically states that embassies are considered the sovereign nation itself and not an independent agency or instrumentality. It states:

> Foreign embassies, consulates, and the permanent missions of member states to the United Nations, the OAS, or other international organizations in the United States will normally be included within the definition of "foreign state" because they are integral parts of their governments and lack separate legal identities and the capacity to sue or be sued in their own right.

See Federal Judicial Center International Litigation Guide, "The Foreign Sovereign Immunities Act: A Guide for Judges," at 29.[2]

Defendants do not contest that the SUV driver was an employee of the Saudi Embassy and was acting within the scope of that employment. Defendants' Memorandum at 2-3. Defendants also do not contest this Court's jurisdiction, which is premised on the notion that defendants' driver was an employee and acting within the scope of employment. *Id.* at 3 ("Subject matter jurisdiction is conferred by the Foreign Sovereign Immunities Act, …. [the Act], which waives sovereign immunity for torts, including motor vehicle accidents.") (citations omitted); *see also* 28 U.S.C. section 1605(a)(5). Those statements by defendant, read together with the line of cases above, conclusively establish that defendant Kingdom of Saudi Arabia may be held liable for defendants' driver's actions. Stated differently, because the Saudi Embassy is treated "as a matter of law" as part of the Kingdom of Saudi Arabia, and both defendants have conceded that the Saudi Embassy employed the allegedly negligent driver, the Kingdom of Saudi Arabia is liable as a matter of law for the negligent conduct of defendants' employee.

Indeed, the FJC manual describes this exact scenario as the "prototypical case" whereby a foreign state is held liable under section 1605(a)(5) of the FSIA:

---

[2] The Federal Judiciary Center guide is available on the FJC's website here: https://www.fjc.gov/sites/default/files/2014/FSIAGuide2013.pdf. It was last downloaded on February 24, 2020.

D. Non-Commercial Torts in the United States

> Under § 1605(a)(5), a foreign state is not immune for acts … in which money damages are sought for personal injury or death, … occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his or her office or employment. ***Prototypical cases include injuries resulting from an automobile accident involving an embassy vehicle*** and a "slip and fall" in a foreign consulate.

*See* Federal Judicial Center International Litigation Guide, "The Foreign Sovereign Immunities Act: A Guide for Judges," at 59 (emphasis added).

Remarkably, defendants cite no contrary authority. Defendants provide no authority to support their contention that, because they have admitted that the driver was employed by the embassy, the Kingdom is not properly a defendant to this action. Defendants also cite no support for their *ipse dixit* argument that defendants' driver "cannot be employed by both" Saudi Arabia and its embassy. Rather, the overwhelming authority reveals that the contrary is true. Courts routinely treat the sovereign entity and its embassy as one and the same. *See surpa* at 6-7. By admitting that its embassy employed the driver, defendants were admitting that the Kingdom of Saudi Arabia also did so. Indeed, defendants mischaracterize plaintiff's claims as asserting "that one or the other Defendant" should be held liable for their employee. The law states that both the Kingdom of Saudi Arabia and its embassy are one legal entity.

As noted by the authorities cited above, in the absence of any law or showing by defendants that the Embassy of Saudi Arabia has some separate legal existence and is not properly considered by U.S. law as part of the foreign sovereign that it represents, there can be no basis for dismissing the Kingdom of Saudi Arabia from this case.

Even if the Court were inclined at this time to entertain a motion for summary judgment on such little substance, discovery would be needed before such a motion could be adjudicated. According to Rule 56(d) of the Federal Rules of Civil Procedure, when a summary judgment

motion is made before the close of discovery, a party has a right to take discovery of the factual issues raised in the summary judgment motion. Here, the summary judgment motion has been raised based on a factual contention before discovery has even started. There has been no discovery of what defendants' driver's employment status was, who paid him, whether there is any factual basis to distinguish between the Saudi Embassy and the Saudi Kingdom, whether the embassy is a separately incorporated agency or instrumentality or part of the kingdom, the nature of the errand that defendants' driver was running at the time of the collision, or any other issue. In the absence of such discovery, it is premature for the Court to make factual findings as to whether the Kingdom of Saudi Arabia was or was not the employer of the negligent driver. *See* Declaration of Denis C. Mitchell, attached as Exhibit 7. This is especially true where there is settled law saying that the Kingdom of Saudi Arabia and the Embassy of Saudi Arabia have no legally separate existence and defendants have admitted that the driver was employed by the embassy.

2. **Because both defendants are a "foreign state" for all purposes under FSIA, venue is proper in this Court.**

This judicial district is an appropriate venue for any claim against a foreign state. Venue in FSIA cases is controlled by 28 U.S.C. section 1391(f). Subsection (4) of that provision pertains to "foreign states and political subdivision thereof," and states:

> **(f) CIVIL ACTIONS AGAINST A FOREIGN STATE.**—A civil action against a foreign state as defined in section 1603(a) of this title may be brought … **(4)** in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

This statute leaves no room for interpretation: if the defendant is a foreign state, this Court is a proper venue.

Here, as decided in the plethora of cases cited above, both defendants in this case qualify as a "foreign state." *See supra* at 6-7. These cases – read as a group - also make clear that claims against a foreign state's embassy are properly filed in this venue. In fact, a foreign embassy was the lead named defendant in all five of the cases from this Court cited above. In light of this caselaw and the clear statutory mandate in section 1391(f)(4), there can be contrary argument.

Defendants attempt to argue that the embassy is not a foreign state for venue purposes and cite *Grey v. Permanent Mission of the People's Republic of the Congo*, 443 F. Supp. 816, 820 (S.D.N.Y. 1978). This decision – which dealt with service of process - plainly contradicts defendants' position. That court ruled that the diplomatic mission from the Congo ***was a foreign state*** and not an agency or instrumentality for FSIA purposes. It stated: "Indeed, it is hard to imagine a purer embodiment of a foreign state than that state's permanent mission to the United Nations." *Id.* Three decades later, this Court has made the same determination with respect to the Embassy of Congo. *Int'l Road Fed. v. Embassy of Democratic Republic of Congo,* 131 F. Supp. 2d at 250 (D.D.C.2001) (concluding that "Defendant [embassy] is a foreign state" and thus a higher level of proof of liability was required in order to enter a default judgment).

Defendants ask the Court to issue a ruling that the Embassy of Saudi Arabia should not be treated as a foreign state for the purpose of venue in this case, and thus clearly ask the court to disregard its prior rulings and the rulings of the court in *Gray*. Defendants provide no authority for this request. There is none.

Instead, defendants repeatedly cite to the allegation in plaintiff's complaint that the Saudi Embassy is an agency and instrumentality of the Kingdom of Saudi Arabia. Plaintiff made this allegation in the alternative. Indeed, plaintiff also pleaded that the Kingdom "owns and

operates" the Embassy (complaint at paragraph 8), that defendants' driver was an employee of the Kingdom of Saudi Arabia (complaint at paragraphs 1, 2, 19), and that the driver was acting within the scope of his employment when he ran a red light and hit Ms. McGee (complaint at paragraph 19, 20). This overly cautious naming of defendants makes sense, as the case was filed close to the three-year anniversary of the collision and plaintiff could not risk having the case dismissed without having the proper party named. This pleading format – i.e., naming the sovereign and its embassy as defendants – has been used in cases against sovereigns and embassies in the past in this Court and the Court treated them both as the foreign state. *See, e.g., Underwood v. United Republic of Tanzania*, 1995 WL 46383, *2 ("The functions of an embassy are so integrally related to the core functions of government that it qualifies as part of the foreign state for service of process regardless of whether the embassy has a separate name and some power to conduct its own affairs.") At this stage, such "belt-and-suspenders" allegations are more than sufficient to state a claim against the Saudi government, especially when defendants have admitted that their driver was acting within the scope of his employment and provide no basis for dismissal or to set aside the congressional selection of this Court as a proper venue.

Defendants' conduct in this case is also consistent with the treatment of the embassy as a foreign state for all FSIA purposes. For example, defendants do not contest that service upon them was appropriate, even though both were served in accordance with section 1608(a), as opposed to 1608(b) (i.e., the mechanism for "foreign states" as opposed to their "agencies or instrumentalities"). As plaintiff sought, the clerk of this Court requested that service be made upon both defendants in accordance with the strictures of 28 U.S.C. section 1608(a), and the U.S. Department of State certified that such service occurred on December 17, 2019. *See* Exhibit 8 (docket entries 10 & 11, plaintiff's request for foreign mailings under section 1608(a)(4) on both

defendants), 9 (docket entry 13, certificate from the clerk that such mailings were made via U.S. Department of State) and 10 (docket entry 14, certification from the State Department confirming that service occurred on the Kingdom of Saudi Arabia and its embassy). Indeed, the fact that both defendants were served under the section reserved for "foreign states" (as opposed to instrumentalities) is further support for plaintiff's arguments in this paper. Indeed, if plaintiff had served defendants as an "agency or instrumentality" for the purposes of service, one can rest assured that the Embassy would be seeking dismissal on that basis.

Because there can be no meaningful dispute that this Court is an appropriate venue for a foreign state defendant and that the Embassy of Saudi Arabia is treated as a "foreign state" for FSIA purposes, venue is appropriate here under section 1391(f)(4).

3. **In the alternative, even if Embassy were treated as an "agency and instrumentality," venue would still be proper.**

Even if - contrary to the string of cases cited above - one did not treat the Embassy of Saudi Arabia as a foreign state defendant, but rather as an agency or instrumentality, venue would still be appropriate in this Court.

First, venue would be proper here because the Kingdom of Saudi Arabia is undoubtably a foreign state and this jurisdiction is therefore appropriate as set forth above.

Further, even if the embassy were also the sole defendant, this Court would still be a proper venue. Section 1391(f)(3) of title 28 addresses venue in cases against an "agency or instrumentality of a foreign state:"

> **(f) CIVIL ACTIONS AGAINST A FOREIGN STATE.**—A civil action against a foreign state as defined in section 1603(a) of this title may be brought …
> **(3)** in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title….

There is no dispute that the Embassy of Saudi Arabia "is doing business" in this judicial district. The Embassy is based here on Rhode Island Avenue in D.C. One of the major purposes of the embassy is to advance Saudi Arabia's commercial interests. Indeed, Saudi Arabia's website makes clear that the Embassy in the District of Columbia is the primary location for all of its activities here.



See https://www.saudiembassy.net/saudi-offices. According to this website, the Saudi Embassy runs the Information Office, the Commercial Office, the Press Agency, and the Health Mission. There can be no serious dispute that the embassy "is doing business" in this judicial district.

**4. Private and Public Factors Favor this case remaining in this judicial district.**

As documented above, defendants' motion to dismiss or transfer pursuant to 28 U.S.C. §1391 is without merit. Alternatively, defendants seek transfer pursuant to 28 U.S.C. § 1404(a) for the convenience of parties and witnesses and in the interest of justice. This basis for transfer is equally without merit.

To warrant transfer of venue under § 1404(a), the moving party must show that considerations of convenience and the interest of justice weigh in favor of transfer. *Douglas v.*

*Chariots for Hire*, 918 F. Supp. 2d. 24, 31 (D.D.C. 2013). The inquiry calls on the Court to weigh in the balance a number of private-and public-interest factors. *Id.* Private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. The public-interests factors include (1) the transferee's familiarity with governing law; (2) the relative congestion of the calendars of the transferor and the transferee courts; and (3) the local interest in having local controversies decided at home. *Id.* "The burden is on the moving party to establish that transfer is proper," and "[a] plaintiff's choice of forum is 'a paramount consideration in any determination of a transfer request.' *Id.* "A plaintiff's considerable freedom to bring a lawsuit in an advantageous forum shall not be compromised by a transfer that 'merely shift[s] the inconvenience from one party to the other.'" *Id.,* citing 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3848 (3rd ed.1998) (citation omitted).

The private factors favor this judicial district. As noted above and shown on the attached chart (Exhibit 6), this judicial district is more convenient for the defendants, closer for the plaintiff, closer for the first responders who may be called to testify, closer for many of the medical providers who may be called to testify, and closer for several of the fact witnesses who witnessed defendant's negligence. It is also plaintiff's choice of forum. In addition, defendants should not be heard to complain about the convenience of their own home forum. There is no disputing that the private factors favor this Court.

Public factors also favor this Court. This Court, located in the judicial district with more embassies to the United States than any other, has ample experience dealing with cases involving foreign sovereigns. Indeed, Congress specifically earmarked this judicial district as the district

where all claims against foreign states may be filed. *See* 28 U.S.C. 1391(f)(4). In light of such a designation, it is hard to fathom a public interest factor that could outweigh a specific instruction from Congress.

Defendants cite none. There is no undue risk of this case improperly absorbing the time of D.C. jurors, since it will be a non-jury trial. Additionally, because the Kingdom of Saudi Arabia runs its embassy from this jurisdiction, this jurisdiction has a fundamental interest in policing the conduct of the employees of the Kingdom. Lastly, to the extent that this Court must apply Virginia tort law, it is well-equipped to do so. None of this law is overly complicated, and federal courts routinely conduct choice of law analysis in tort cases and apply the law of other states. *See generally* In Re APA Assessment Fee Litigation, 766 F.3d 39, 51-53 (D.C. Cir. 2014).

5. **Defendants' arguments on "election of remedies" make no sense and provide no basis to dismiss or transfer this action.**

Defendants' convoluted argument regarding election of remedies is a mix of legal errors and misunderstandings. First, defendants conflate the doctrine of claim preclusion with the doctrine of election of remedies. They are very different. Under the doctrine of claim preclusion, or *res judicata*, a judgment may have preclusive effect in certain circumstances. *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 302 (D.D.C. 2014). There is no preclusive effect of prior proceedings unless they have been reduced to judgment. *Id.* ("In order for the plaintiffs' claims to be barred by the doctrine of claim preclusion, (1) there must have been a final judgment on the merits"). Here, there is no judgment in any proceeding. As such, there can be no preclusion. It is that simple. Defendants' motion suggests that filing two proceedings from the same occurrence requires dismissal of one of the proceedings. This is never true, unless one of the proceedings has been reduced to judgment on the merits. As noted

by the Supreme Court, there is nothing inherently inappropriate about filing a protective action. *Exxon Mobil Corp., v. Saudi Basic Industries Corp.*, 544 U.S. 280, 294 n.4 (2005).

The plaintiff in this case suffered severe and life altering brain injury when she was struck as a favored pedestrian in a crosswalk by an SUV that ran a red light. Plaintiff initially believed she could achieve full recourse in Virginia state court, but learned that that action may be inherently limited by the insurance coverage available to the driver employed by defendants. As such, plaintiff nonsuited the Virginia case and filed in this Court, a venue selected by Congress for pursuing claims against foreign state defendants. She only refiled her case in Virginia against the driver as a protective action. Nothing in that procedural history provides any basis to dismiss this case.

Defendants' so-called "election of remedies" arguments make no sense. While it is true that Virginia law requires at times that a plaintiff elect between a tort remedy and a contractual remedy, or between a wrongful death or a survival act, or between legal and equitable remedies, this doctrine has no bearing on this case. There is no contractual or equitable remedy sought in this case. This has been a tort case from the moment it was filed. The tort claim against the driver in Virginia was nonsuited, and then was refiled only to avoid the expiration of the statute of limitations, in the event that defendants in this case sought to avoid adjudication on the merits. Likewise, there is no election of remedies issues as to wrongful death versus survival action, since this case has nothing to do with the death of anyone. In short, defendants try to contort the law to convince the Court that somehow plaintiffs have been attempting to drive up inefficiencies in litigation. This is the farthest thing from the truth.

None of the cases cited by defendants on *res judicata* or election of remedies provides any basis to dismiss this case.

Defendants' Res Judicata/Claim Preclusion Cases

In *Tolson v. U.S.*, 732 F.2d 998 (D.C. Cir. 1984), the D.C. Circuit dismissed an appeal for want of final judgment, ruling that the trial court erroneously granted judgment under Rule 54(b) on one part of several claims. It does not state, and certainly does not *hold*, that a plaintiff is not permitted to maintain consecutive suits against an employee and his employers, where none of those cases has been reduced to judgment.

Likewise, *U.S. Industries, Inc. v. Blake Const. Co., Inc.,* 765 F.2d 195 (D.C. Cir. 1985) involved two consecutive lawsuits, the first of which went to final judgment and was appealed. It has no bearing on this case.

Similarly, in *Gilles v. Ware*, 615 A.2d 533 (D.C. 1992), the court was very clear that preclusion attached only because there had been final judgment on the merits in the first of two consecutive lawsuits. *Id.* at 538-39 ("After a valid ***final judgment on the merits*** of a judicial proceeding, the doctrine of *res judicata* (claim preclusion) absolutely bars the same parties from relitigating the same claim (and, generally, any claim that should have been raised) in a subsequent lawsuit. …. ***A final judgment*** on the merits embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which *might have been raised* in the prior action.") (citations omitted; emphasis added).

Defendants provide no authority that the mere filing of an unserved protective action has any preclusive effect. There is no such authority.

Defendants' Election of Remedies Cases

In *Jennings v. Realty Developers, Inc.* 171 S.E.2d 829 (Va. 1970), the Court affirmed a trial court's decision to force a plaintiff to choose between the equitable remedy of specific

performance and the legal remedy of damages. Plaintiff in *Jennings* was actively litigating both remedies when the law afforded the right to choose one or the other. The decision has no bearing on this case. It is well-settled that the plaintiffs' nonsuit against the driver is not a judgment on the merits and that it lacks any preclusive effect. Defendants do not argue to the contrary. Likewise, there is no prohibition against filing a case against a negligent driver's employers, and then filing a second action in another forum against the driver in order to ensure that all claims are preserved.

Similarly, the Court's decision in *Standard Prods. Co. v. Wooldridge & Co.*, 201 S.E.2d 801, 806 (Va. 1974), involves a case where the plaintiff, having prosecuted a breach of contract case to final judgment, could not later pursue a tort remedy against the defendant and defendant's fellow tortfeasors. In this case before the Court, there is no election between tort and contract and no claim has gone to judgment.

Defendant's reliance on these cases is entirely misplaced.

## **CONCLUSION**

Defendants' motion provides no factual or legal basis to dismiss or transfer this action. The motion should be denied and defendants should be instructed to answer the complaint and proceed with discovery on the merits.

Respectfully submitted,

*/s/ Denis C. Mitchell*
Denis C. Mitchell - #480940
dmitchell@steinmitchell.com
Richard A. Bussey #249672
rbussey@steinmitchell.com
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street, Suite 700
Washington, DC  20005
(202)  737-7777

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2020, a copy of the foregoing opposition and associated papers were served on all parties via electronic case filing system of the Court and emailed to:

D. Stephenson Schwinn, Esq.
JORDAN COYNE LLP
10201 Fairfax Boulevard
Fairfax, Virginia 22030

*/s/ Denis C. Mitchell*